# In the United States Court of Federal Claims

No. 09-86 C

(Filed November 10, 2009)

| | |
|---|---|
| KYLE E. GRAMLING, | ) |
| Plaintiff, | ) |
| v. | ) |
| | ) |
| THE UNITED STATES, | ) |
| Defendant. | ) |

## ORDER

Plaintiff, Kyle Gramling's, Complaint seeks enhanced disability severance pay, pursuant to 10 U.S.C. §§ 1203, 1212(c), stemming from his discharge from military service as a result of ankle and other injuries incurred during a parachute jump while he was enrolled in the Airborne School at Fort Benning, Georgia. Defendant has filed a Motion to Dismiss, or in the Alternative, for Judgment upon the Administrative Record. Plaintiff opposes defendant's motion.

## Facts

Except where the record is cited, the following relevant facts are derived from those agreed to by the parties as reported in the Statement of Facts, filed by defendant pursuant to RCFC 52.1(c)(1) and Plaintiff's Response, filed pursuant to RCFC 52.1(c)(2).

Plaintiff entered active duty service with the United States Army on August 17, 2006. He enlisted as a Chaplain's Assistant with the rank of specialist (E4). From August 2006 to February 2007, plaintiff attended basic training and advanced individual training at Fort Jackson, South Carolina, which included training as an Army Chaplain's Assistant. In February, 2007, plaintiff enrolled in the Airborne School at Fort Benning, Georgia. On or about March 13, 2007, he injured his left ankle while landing during a training parachute jump and underwent surgery at Fort Benning.

In October 2007, after seven months had passed since his injury, plaintiff was still not able to perform the duties commonly expected of soldiers of his position, and

he was transferred to the Warrior Transition Unit at Fort Campbell, Kentucky for long-term care.  Plaintiff underwent additional surgery and multiple courses of physical therapy.  By July, 2008, plaintiff's pain persisted, and he remained unable to perform tasks expected of soldiers in his grade and position.  Army doctors referred plaintiff to the Army Medical Evaluation Board ("MEB") for review of his physical condition and fitness to continue to serve in the Army.

The MEB concluded that plaintiff's ankle pain was "medically unacceptable" under the Army Regulation for Standards of Medical Fitness, and he was referred to the Army Physical Evaluation Board ("PEB") to determine whether he should be separated from service.

An informal PEB on July 25, 2008, issued findings on Department of the Army Form 199 (PHYSICAL EVALUATION BOARD (PEB) PROCEEDINGS).  Box 9 and Box 10 of Form 199 provided as follows (Administrative Record ("AR") [9] at17):

> 9.   THE BOARD FINDS THE SOLDIER IS PHYSICALLY UNFIT AND RECOMMENDS A COMBINED RATING OF: 20% AND THAT THE SOLDIER'S DISPOSITION BE: Separation with severance pay if otherwise qualified.
>
> 10.   IF RETIRED BECAUSE OF DISABILITY, THE BOARD MAKES THE RECOMMENDED FINDING THAT:
>
> A.  THE SOLDIER'S RETIREMENT IS BASED ON DISABILITY FROM INJURY OR DISEASE RECEIVED IN THE LINE OF DUTY AS A DIRECT RESULT OF ARMED CONFLICT OR CAUSED BY AN INSTRUMENTALITY OF WAR AND INCURRING IN LINE OF DUTY DURING A PERIOD OF WAR AS DEFINED BY LAW.
>
> B.  EVIDENCE OF RECORD REFLECTS THE SOLDIER WAS NOT A MEMBER OR OBLIGATED TO BECOME A MEMBER OF AN ARMED FORCE OR RESERVE THEREOF, OR THE NDAA OR THE USPHS ON 24 SEPTEMBER 1975.
>
> C.  THE DISABILITY DID RESULT FROM A COMBAT RELATED INJURY AS DEFINED IN 26 U.S.C. 104.
>
> D.  DISABILITY WAS NOT INCURRED IN A COMBAT ZONE OR INCURRED DURING THE PERFORMANCE OF DUTY IN COMBAT-RELATED OPERATIONS AS DESIGNATED BY THE SECRETARY OF DEFENSE (NDAA 2008 Sec 1646).

The PEB noted that the 10A and 10C "is awarded for ankle injury incurred from a bad PLF [parachute landing fall] on 13 March 2007." (AR 16.)

Plaintiff did not concur with the informal PEB and on August 1, 2008, demanded a formal hearing and requested a regularly appointed counsel to represent him. The formal PEB was convened on September 3, 2008. Plaintiff appeared in person accompanied by a National Service Officer employed by the Disabled American Veterans ("DAV"). Plaintiff confined his challenge of the informal PEB's report to its findings regarding the range of his ankle's motion. The formal PEB agreed with the informal PEB's findings including the Box 9 and Box 10 entries.

Plaintiff did not concur with the formal PEB and, on Form 199-1, dated September 12, 2008, submitted a statement of rebuttal concerning the range of motion of his ankle. The formal PEB responded on September 18, 2008, declining to reverse any of its prior rulings. Plaintiff was informed that the case would be forwarded to the U.S. Army Physical Disability Agency ("USAPDA") for final processing. The USAPDA, on September 25, 2008, noted that the entire case was reviewed and ruled that the findings and recommendations of the PEB "are supported by substantial evidence and are therefore affirmed." (AR 3.)

Plaintiff's DD Form 214 (Certificate of Release or Discharge from Active Duty) lists his separation date as December 15, 2008, records his discharge as "honorable," and lists the reason for separation as "DISABILITY, SEVERANCE PAY, NON-COMBAT RELATED." (AR 1.)

**Discussion**

Plaintiff grounds his monetary claim on enhanced disability severance pay legislation enacted by section 1646 of the National Defense Authorization Act of 2008 ) "NDAA"), Public Law No. 110-181, 122 Stat. 3, 472, amending 10 U.S.C. § 1212. This amendment added a subsection which increased disability severance pay

> [i]n the case of a member separated from the armed forces for a disability incurred in line of duty in a combat zone (as designated by the Secretary of the Defense for purposes of this subsection) or incurred during the performance of duty in combat-related operations as designated by the Secretary of Defense.

10 U.S.C. § 1212(c)(1)(A).

As is evident from Box 10 of the PEB Form 199 quoted, previously the board found that plaintiff's ankle "DISABILITY WAS NOT INCURRED IN A COMBAT ZONE OR INCURRED DURING THE PERFORMANCE OF DUTY IN COMBAT-RELATED OPERATIONS AS DESIGNATED BY THE SECRETARY OF DEFENSE (NDAA 2008 Sec. 1646)." Accordingly, plaintiff's severance pay upon his separation for disability was not enhanced. Plaintiff now seeks a ruling that he was entitled to enhanced severance pay under 10 U.S.C. § 1212(c)(1)(A), and a judgment for the amount involved.

Defendant moves for dismissal of plaintiff's claim based on the assertion that plaintiff waived any claim for enhanced disability severance pay by not challenging the informal PEB adverse Box 10 finding during the ensuing formal PEB proceedings and the subsequent review by the Army Physical Disability Agency. Alternatively, defendant seeks dismissal of plaintiff's claim on the administrative record by defending the validity of the PEB Box 10 finding affirmed by the Army Physical Disability Agency, that plaintiff's ankle disability, incurred at Fort Benning, Georgia, did not qualify for the enhanced disability severance pay authorized by 10 U.S.C. § 1212(c)(1)(A), i.e., on a disability, incurred during the performance of duty in combat-related operations as designated by the Secretary of Defense.

Entitlement to claim pay authorized by 10 U.S.C. § 1212(c)(1)(A) requires final action of a board competent to pass upon the disability and severance involved. In this case, the PEB and the Army Physical Disability Agency performed this function. *See Chambers v. United States*, 417 F.3d 1218, 1224, 1228 (dissent) (Fed. Cir. 2005); 10 U.S.C. § 1203. Responsibility for determining who is fit or unfit to serve in the armed services is not a judicial province. *Heisig v. United States*, 719 F.2d 1153, 1156 (Fed. Cir. 1983). Thus, a final PEB proceeding is a mandatory prerequisite to the monetary claim asserted in this litigation.

Defendant asserts that plaintiff had an obligation to challenge the Board's Form 199 Box 10 entry during the PEB proceedings in order to preserve a claim for enhanced disability severance pay. Major reliance is placed on the ruling in *Metz v. United States*, 466 F.3d 991 (Fed. Cir. 2006). In that case it was determined that the service member waived his ability to challenge, in this court, a decision by the Air Force Board for the Correction of Military Records on the basis of ineffective assistance of counsel because he did not raise that issue first before the Board. *Metz*, 466 F.3d at 999; *see also Gant v. United States*, 63 Fed. Cl. 311, 317 (2004).

Reliance in *Metz* was placed on: *United States v. L.A. Tucker Truck Lines, Inc.*, 344 U.S. 33, 37 (1952); *Murakami v. United States*, 398 F.3d 1342, 1354 (Fed. Cir. 2005); and *Sw. Bell Tel. Co. v. Pub. Util. Commc'n*, 208 F.3d 475, 487 (5th Cir. 2000).

Plaintiff argues against a waiver determination citing two cases in which the service member accepted a PEB finding, but then sought relief from a correction board. It was determined that this court could review the correction board's denial of relief, but not the PEB's finding. *See Van Cleave v. United States*, 66 Fed. Cl. 133 (2005); *Rominger v. United States*, 72 Fed. Cl. 268 (2006). In this case, plaintiff did not seek relief from the Army Board for the Correction of Military Records subsequent to the PEB findings, affirmed by the Army Physical Disability Agency, but prior to filing his complaint in this litigation. Plaintiff seeks to dispute the PEB Form 199 Box 10 finding that was not challenged during the PEB and Army Physical Disability Agency proceedings. *Van Cleave* and *Rominjer* do not support plaintiff's position in that there is no post PEB correction board decision to review.

The waiver ruling in *Metz* comprises precedent which must be followed. *See also Walls v. United States*, 582 F.3d 1358 (Fed. Cir. 2009). Plaintiff's failure to raise the issue of his claimed entitlement to enhanced disability severance pay during the PEB and Army Physical Disability Agency proceedings which resulted in his honorable discharge from Army service with severance pay based upon his ankle injury, precludes the assertion of an enhanced disability severance pay claim initially before this court. *Metz*, 466 F.3d at 999.

Alternatively, were it to be determined that plaintiff did not waive any claim for enhanced disability severance pay by his failure to challenge the adverse Form 199 Box 10 finding, then it is concluded that the Form 199 Box 10 finding is correct and plaintiff is not entitled to recover enhanced disability severance pay. Plaintiff's ankle injury disability, incurred at Fort Benning, Georgia, does not fulfill the requirement of 10 U.S.C. § 1212(c)(1)(A) for enhanced severance pay that the disability be "[i]ncurred during the performance of duty in combat-related operations as designated by the Secretary of Defense." The only designation of combat-related operations on behalf of the Secretary of Defense with respect to 10 U.S.C. § 1212(c)(1)(A), appears to be a March 13, 2008, "Directive-Type Memorandum (DTM) on Implementing Disability-Related Provisions of the National Defense Authorization Act of 2008 (Pub. L. 110-181)." (AR 114-121.) For Section 1646 of the National Defense Authorization Act of 2008 this DTM added provisions to the

relevant Department of Defense Instruction noting that "[t]he determination of 'incurred during performance of duty in combat-related operations' shall be made consistent with criteria set forth in paragraph E3.P5.1.2." (AR 119.) Paragraph E.3.P5.1.2 "Armed conflict," provides: that

> [t]he physical disability is a disease or injury incurred in the line of duty as a direct result of armed conflict. The fact that a member may have incurred a disability during a period of war or in an area of armed conflict, or while participating in combat operations is not sufficient to support this finding. There must be a definite causal relationship between armed conflict and the resulting unfitting disability.

Clearly, plaintiff's Fort Benning, Georgia incurred ankle disability was not a direct result of armed conflict, and would not qualify to support a recovery of enhanced disability severance pay under the March 13, 2008 DTM designation.

Plaintiff objects to the March 13, 2008 DTM designation by noting that the applicable DoD instruction (DoDI 5025.01 (5)(d)) provides that "The Heads of the OSD Components shall incorporate all DTMs into an existing DoD issuance or convert them to a new DoD issuance, or shall reissue or cancel them, prior to their expiration 180 days from the date of their publication." (Pl.'s [15] Resp. 9-10.) Plaintiff asserts that the DTM expired after 180 days so could not be relevant. Defendant responds that the DTM has been reissued several times and remains valid Department of Defense policy. (Def.'s [18] Reply 11 fn3.) However, as the March 13, 2008 DTM is apparently the only "designation" on behalf of the Secretary of Defense as to the "combat-related operations," as utilized in 10 U.S.C. § 1212(c)(1)(A), which qualify for enhanced disability severance pay, if this DTM were not in effect, no designation for any such operations appears to exist and there would be no basis for a recovery of enhanced disability severance pay. Congress expressly provided for recovery of enhanced disability severance pay only for disability incurred in "combat-related operations as designated by the Secretary of Defense." 10 U.S.C. § 1212(c)(1)(A). Therefore if plaintiff's objection to the March 13, 2008 DTM were valid, this would only support dismissal of his claim for lack of any applicable designation.

Plaintiff takes issue with the substance of the March 13, 2008 DTM by citing other legislation in which Congress defined similar terms. For example, for tax

matters covered in 26 U.S.C. § 104, "Compensation for injuries or sickness," the term "combat-related injury" is defined as:

> personal injury or sickness –
>     (A) which is incurred –
>         (i) as a direct result of armed conflict
>         (ii) while engaged in extrahazardous service, or
>         (iii) under conditions simulating war; or
>     (B) which is caused by an instrumentality of war[.]

26 U.S.C. § 104(b)(3).

By comparison with 10 U.S.C. § 1212(c)(1)(A), where the relevant "combat-related operations" were designated, on behalf of the Secretary of Defense, to be those incurred "as a direct result of armed conflict," in 26 U.S.C. § 104(b)(3), to define "combat-related injury," Congress listed: "direct result of armed conflict"; "engaged in extrahazardouss ervice"; "under conditions simulating war"; and "caused by an instrument of war." Because parachute jumping involves an instrument of war or extrahazardous service, Box 10 C of the Form 199 in plaintiff's PEB proceeding notes that plaintiff's ankle "DISABILITY DID RESULT FROM A COMBAT RELATED INJURY AS DEFINED IN 26 U.S.C. 104." (AR 16-17.) There is no conflict with the Form 199 Box 10 D entry that plaintiff's disability was not incurred "DURING THE PERFORMANCE OF DUTY IN COMBAT-RELATED OPERATIONS AS DESIGNATED BY THE SECRETARY OF DEFENSE (NDAA 2008 Sec 1646)" because the qualifying disabilities for 10 U.S.C. § 1212(c)(1)(A) were defined only as those incurred "as a direct result of armed conflict." (AR 16-17.)

The "Box 10 A" entry on Form 199 records the PEB finding relevant for certain federal civil service matters. This is evident from the March 13, 2008 DTM which notes that "[a]rmed conflict" means disease or injury incurred as a "direct result of armed conflict" with reference to "5 U.S.C. § 3502, 5532 [Repealed], 6303." (AR 120.) Also, a February 3, 2009 Opinion of the Agency Legal Advisor, Army Physical Disability Agency states in its "PREFACE":

> Service Members whose disabilities are the direct result of armed combat, combat devices, or combat training (often together grouped under the term 'combat related' are authorized tax exemptions for their

disabilities and may be entitled to Federal employment benefits. In the U. S. Army these designations are noted on Department of the Army Form 199, Blocks 10a and 10c. Block 10d is used to designate severance pay enhancement . . . .

(Def.'s [9] Mot. 10 fn3; Def.'s [18] Reply 9; and Pl.'s [15] Resp.10, Ex. B at 1.)

As set forth *supra*, the 10 A entry on the Form 199 for plaintiff's ankle disability and resulting discharge from service, states that it is based on "[I]NJURY OR DISEASE RECEIVED IN THE LINE OF DUTY AS A DIRECT RESULT OF ARMED CONFLICT OR CAUSED BY AN INSTRUMENTALITY OF WAR . . . ." Using 5 U.S.C. § 6303 for an example, this statute provides that credit for prior military service is provided for civil service annual leave accrual computation if the employee is retired from uniformed service for a disability "(i) resulting from injury or disease received in the line of duty as a direct result of armed conflict ; or (ii) caused by an instrumentality of war. . . ." 5 U.S.C. § 6303(a).

Plaintiff perceives a conflict between the 10 A and 10 D findings on the Form 199 for plaintiff's disability. Plaintiff would be correct if the 10 A entry stated <u>only</u> that his disability was incurred "as a direct result of armed conflict," the same qualifier as that required for enhanced disability severance pay. However, the 10 A entry is comprised of a series of "ORs." The finding covers "DISABILITY FROM INJURY OR DISEASE." Plaintiff's disability was from an injury. The finding states that the disability was received "AS A DIRECT RESULT OF ARMED CONFLICT OR CAUSED BY AN INSTRUMENTALITY OF WAR." Plaintiff's disability was caused by an "instrumentality of war" – a parachute. ("[B]ecause of the high injury rate, the extra military equipment carried, the exiting of a military aircraft, and the historical aspects of the origin of the parachute development that the parachute itself will remain classified as an instrumentality of war.") (Pl.'s [15] Resp. Ex. B at 3.)) Accordingly, the 10 A finding for federal employee benefits presents no conflict with the 10 D entry denying enhanced disability severance pay by finding that plaintiff's disability was not incurred in "combat-related operations as designated by the Secretary of Defense," i.e., as a direct result of armed conflict.

Plaintiff also asserts that the designation in the March 13, 2008 DTM conflicts with a subsequent January 6, 2009 Department of Defense Memorandum for "Expedited DES [Disability Evaluation System] Process for Members with

Catastrophic Conditions and Combat-Related Causes." (Pl.'s [15] Resp. Ex. A.)  As the record in this matter does not show that plaintiff's condition comprises "[a] permanent, severely disabling injury . . . that compromises the ability to carry out the activities of daily living to such a degree that a Service member requires personal or mechanical assistance to leave home or bed, or requires constant supervision to avoid physical harm to self or others," plaintiff is not within the scope of the January 6, 2009 Department of Defense Memorandum. (*Id.*, ¶ E2.1.3.4.)  There is no conflict with the March 13, 2008 DTM designation for enhanced Disability Severance Pay.

### Conclusion

In enacting section 1646 of the National Defense Authorization Act of 2008, codified as 10 U.S.C. § 1212(c)(1)(A), Congress did not choose to employ the "combat-related" language of several statutes, such as: 5 U.S.C. §§ 3501(a)(3)(A), 3502(a)(2), 6303(a)(3)(A), 8332 (c)(2)(A); 10 U.S.C. §§ 1074i, 1413a(e)(2); 26 U.S.C. § 104(b)(3)(A).  Rather, Congress authorized enhanced disability severance pay for disabilities incurred "in combat-related operations as designated by the Secretary of Defense."  Plaintiff's disabling injury was not incurred in such a designated combat-related operation.  Thus plaintiff cannot establish entitlement to monetary relief under 10 U.S.C. § 1212.  *Doe v. United States*, 372 F.3d 1347 (Fed. Cir. 2004) (employees not entitled to overtime pay in the absence of qualifying under the authorizing statute and regulation).  In addition, plaintiff did not assert any objection to the adverse Box 10 D finding by the PEB during the Army's proceeding concerning his disability and resulting severance from military service.  In this circumstance, it is **ORDERED** that:

(1) Final judgment be entered **DISMISSING** Plaintiff's Complaint pursuant to RCFC 12(b)(6); and

(2) Alternatively, that judgment be entered **GRANTING** Defendant's Motion for Judgment on the Administrative Record and **DISMISSING** Plaintiff's Complaint, with no costs to be assessed.

s/ James F. Merow
James F. Merow
Senior Judge